## GRAFF v. LOUIS.

(Circuit Court, D. Nebraska. January 7, 1896.)

1. JUDGMENTS—COLLATERAL ATTACK.

When a collateral attack is made on the validity of judicial proceedings, the question whether the court whose order or judgment is attacked could, under any state of facts, have had jurisdiction, is always open to examination; but if it appears that such court had jurisdiction over the general subject-matter, and the question is whether it had the right to proceed in the particular case brought before it, such right being dependent upon the existence of certain facts, the court, by proceeding, adjudges that it has jurisdiction in the particular case, and thereby adjudges the existence of the necessary facts; and this adjudication, being within its power to make, is, when made, binding upon all parties, unless reversed in a proper and direct proceeding, and is not open to collateral attack.

2. SAME.

H. and others brought an action in a Nebraska court of competent jurisdiction against G. and others, nonresidents of that state, and filed in the clerk's office an affidavit for the purpose of securing an attachment against the defendant's property in accordance with the procedure in that state. The clerk accordingly issued the attachment, which was levied upon land, the record title to which stood in G.'s name. Afterwards, by due proceedings, judgment was entered in the action, the defendants being served by publication, and not answering, and the attached property was sold under the order of the court, and bought by one L. Subsequently one E., to whom G. had conveyed the land before the commencement of the attachment suit, but whose deed was not recorded till after the sale to L., brought suit against L. to assert his title to the land, alleging that the affidavit upon which the attachment against G. & Co. was granted did not comply with the requirements of the Nebraska statutes. *Held*, that the validity of the judgment of the Nebraska court could not be collaterally attacked on such ground.

This was a suit by E. D. Graff against Jacob Louis to quiet title to certain land in Platte county, Neb.

George G. Bowman, for complainant.

McAllister & Cornelius and Mahoney & Smythe, for defendant.

SHIRAS, District Judge. This case was submitted to the court upon an agreed statement of facts, and it therein appears that in the early part of the year 1888 one John Graff was the owner of the realty in dispute, the deed to him and all prior conveyances being duly filed and recorded in Platte county, Neb.; that on the 27th of February, 1888, said John Graff sold and conveyed the premises, by deed of general warranty, to the complainant, E. D. Graff; that this deed was not filed for record in Platte county until in May, 1889; that on the 24th of March, 1888, an action at law was commenced in the district court of Colfax county, Neb., by F. A. Hoffstots and W. O. Taylor, copartners, against the said John Graff, James J. Bennett, and Robert Marshal, copartners, to recover the sum of $24,888.75, the amount due on eight promissory notes executed by the defendants in that suit; that the defendants therein were nonresidents of the state of Nebraska, and no personal service of the notice was had upon them; that a writ of attachment was issued in that action on the ground that the defendants were nonresidents of Nebraska, and served by levying on certain lands in Colfax county, and an auxiliary writ of attachment was issued to the sheriff of Platte county, and was by him levied upon the realty situated in that county to which the record title appeared in the name of John Graff, he being one of the defendants in the attachment suit; that due notice of the pendency of that suit was given by publication as provided for by the statute of Nebraska, and, no appearance being entered for the defendants, judgment by default was entered in the case, finding the amount due on the notes sued on, and ordering a sale of the realty attached; that such sale was duly made, the realty in the bill described being sold to Jacob Louis, the defendant herein, for the full and fair value thereof; that the sale so made was confirmed by the court, and a sheriff's deed was executed to the defendant herein, and on the 26th of November, 1888, was duly filed for record in Platte county; that the levy of the attachment, the judgment and order of sale, the sale and confirmation thereof, the payment of the purchase price by defendant, and the delivery and recording of the sheriff's deed all took place some months before the deed to complainant was recorded, and the defendant purchased the premises, as above stated, without any knowledge or notice of the fact that John Graff had conveyed the title to complainant. The present proceeding in equity was brought by complainant for the purpose of quieting the title to the realty situated in Platte county, and the contention of the complainant is that the validity of defendant's title depends upon the validity of the proceedings in the attachment suit, and the validity of these proceedings depends upon the question of whether there was a valid writ of attachment issued, which in turn depends upon the question whether the affidavit filed in the case as the basis for the issuance of the writ of attachment fully met the requirements of the statutes

of Nebraska, so as to justify the issuance of the writ. The statute, after stating the several grounds justifying the issuance of the writ, provides:

"An order of attachment shall be made by the clerk of the court in which the action is brought in any case mentioned in the preceding section when there is filed in his office an affidavit of the plaintiff, his agent or attorney, showing: First, the nature of the plaintiff's claim. Second, that it is just. Third, the amount which the affiant believes the plaintiff ought to recover. Fourth, the existence of some one of the grounds for an attachment enumerated in the preceding section."

The affidavit for the attachment filed with the clerk reads as follows, omitting the formal heading, stating the court and title of the case:

"J. H. McCulloch, being first duly sworn, deposes and says that he is one of the attorneys in the above-entitled action; that the said plaintiffs have commenced an action against said defendants in the district court of said county to recover the sum of twenty-four thousand eight hundred eighty-six and $75/100$ dollars, with interest, now due and payable, from the defendants to the plaintiffs upon the defendants' promissory notes. And affiant further says that the said defendants are nonresidents of the state of Nebraska, and have lands in the counties of Douglas, Colfax, and Platte, in said state, subject to attachment, and to the claims of said plaintiffs; and further affiant saith not."

It is admitted by complainant that all the other steps taken in the attachment suit, including the sale and execution of deed to the defendant, were properly taken; but it is claimed that the affidavit submitted to the clerk did not meet the requirements of the section of the statute above quoted, in that it did not aver or show that the claim sued on was just, nor did it properly aver that affiant believed that plaintiff was entitled to recover the amount sued for. It is admitted by plaintiff that the affidavit sufficiently states the nature of plaintiffs' claim and also the ground upon which the right to a writ of attachment was based, to wit, the nonresidence of the defendants; and the objections to the sufficiency of the affidavit are solely those above stated.

Counsel for complainant has cited in his brief a number of cases wherein it is held that the proceedings by attachment, being a special statutory remedy, must strictly follow the provisions of the statute; and the affidavit, to be sufficient, must set forth the statutory requirements positively, nothing being left to mere inference. In many of these cases the question was presented in a direct attack upon the validity or correctness of the attachment proceedings, in which the real point was whether there was reversible error in the action of the trial court. These decisions and the reasoning therein have but little application, if any, to a case wherein the attack upon the attachment proceedings and the title based thereon is made collaterally. The first point of inquiry, therefore, is whether the present proceeding is a direct or collateral attack upon the proceedings in the attachment suit, and, if it is a collateral attack, then the next question is, what matters are open to investigation in an attack of that character upon the validity of the judgment rendered in the district court of Colfax county, and the

sale of the realty based thereon? The present proceeding is merely a suit in equity to settle and quiet the title to the realty in dispute. Neither the complainant nor the defendant was a party to the attachment suit. This court cannot enter a decree ordering the judgment entered in favor of F. N. Hoffstots & Co. against Graff, Bennett & Co. to be canceled, set aside, or modified in any respect or degree, for those parties are not before this court, and this court has no control over the record of the action and judgment pending in the district court of Colfax county. The present proceeding is not to obtain a new trial in the attachment suit, nor to set aside the judgment for error, fraud, mistake, or accident. Whatever the decree may be in this suit, it will have no effect upon the record or judgment in the attachment case. It is clear, therefore, that the present proceeding cannot be construed to be a direct attack upon the validity of the proceedings in the attachment case, but is merely a collateral attack on the title based thereon; and the next question, therefore, is whether the objections made to the form of the attachment affidavit are such that they can be of any avail in support of a collateral attack upon the validity of the title based upon the judgment rendered in that case. The necessity for clearly distinguishing between the two modes of attack is apparent when the rights of a third party—as, for instance, an innocent purchaser for value at the execution sale—are involved. If the attack is direct, as by motion or petition for a new trial, or by appeal to a higher court, or by a petition filed to vacate or modify the judgment, or by a bill in equity to set aside the judgment, ordinarily the court, having control over the original proceedings, and having before it the parties to the litigation, can mold the relief to the equities of the case. Thus many omissions or errors may be corrected by allowing amendments. Innocent purchasers may be protected by subrogating them to the rights of the plaintiffs, and in other ways. If, however, the attack is purely collateral, the court cannot protect the rights of third parties. In a collateral attack the power of the court is ordinarily limited to adjudging that the rights or title based upon the judicial proceedings are void or that they are valid. Thus, in the present case, if it should be held that the attachment proceedings were void, then the defendant's title to the land would be invalid, and the defendant would lose the land; and the court could not afford him any protection or aid him in recovering the money by him paid at the execution sale, and hence it is that in all cases of collateral attack a purchaser at the execution sale can invoke to the fullest extent the protection of the rule that as against third parties an execution sale and a title based thereon can only be impeached by showing a want of jurisdiction or lack of power in the court ordering the sale. Thus, in Griffith v. Bogert, 18 How. 158–164, it is said:

"The objections to this sale do not reach the power of the court or the authority of the sheriff to sell. The issuing of an execution on a judgment before the stay of execution has elapsed, or after a year and a day, without reviving the judgment, the want of proper advertisements by the sheriff, and

other like irregularities, may be sufficient ground for setting aside the execution or sale on a motion of a party' to the suit or any one interested in the proceeding; but when the objections are waived by them, and the judicial sale founded on these proceedings is confirmed by the court, it would be injurious to the peace of the community and the security of titles to permit such objections to the title to be heard in a collateral action."

In Voorhees v. Jackson, 10 Pet. 449, a collateral attack was made upon a title to realty situated in Ohio, which title was based upon a judgment and sale made in an action against nonresidents, aided by an attachment, the objections to the validity of the title being that no affidavit was filed with the clerk as required by the statute of Ohio; that the statutory requirement of nine months' notice by publication of the issuance of the attachment did not appear to have been given; that the statute forbade a sale until after the expiration of twelve months from the return of the writ of execution, and it did not appear when the sale was in fact made. The court held that, as against a purchaser at the judicial sale, all these matters must be deemed to be mere irregularities, not to be availed of in a collateral proceeding; it being said:

"That when power or jurisdiction is delegated to any public officer or tribunal over a subject-matter, and its exercise is confided to his or their discretion, the acts so done are valid and binding as to the subject-matter; and individual rights will not be disturbed collaterally for anything done in the exercise of that discretion within the authority and power conferred. The only questions which can arise between an individual claiming a right under the act done and the public or any person denying their validity are power in the officer and fraud in the party. All other questions are settled by the decision made or the act done by the tribunal or officer, unless an appeal or other revision of their proceeding is prescribed by law."

To the same effect are the cases of McNitt v. Turner, 16 Wall. 352–366; Florentine v. Barton, 2 Wall. 210–216; Comstock v. Crawford, 3 Wall. 396–406; Mohr v. Manierre, 101 U. S. 418.

In the case now before the court it is not denied that the district court of Colfax county is a court of competent jurisdiction, nor is it denied that the statutes of Nebraska provide for the issuance of writs of attachment on the ground that the defendant is a nonresident of the state, and provide for service of notice by publication; so that a judgment good against the property attached can be rendered in an action against nonresidents having property within the state. It is admitted that, if the affidavit filed with the clerk of the court in Colfax county had in all respects complied with the requirements of the statute, the issuance of the writ of attachment would have been lawful, and the levy of the writ, the judgment, and subsequent sale would have conveyed a good title to the purchaser. It must, therefore, be admitted that the district court had full power and jurisdiction to entertain the action brought by F. A. Hoffstots & Co. against Graff, Bennett & Co. It had full power and jurisdiction, upon a proper showing, to issue a writ of attachment in aid of the plaintiff's claim therein. When the petition and affidavit for an attachment were filed, that court had jurisdiction over the question whether the plaintiffs were entitled to the issuance of the writ, and it became its duty to decide that question; and its decision, no matter how

erroneous it may in fact have been, is binding upon every other court, as well as upon the parties to the action, and all others claiming under them, unless it has been reversed or set aside by some tribunal having authority so to do.    The statute of Nebraska provides that the clerk of the court shall make an order for an attachment when there is filed in his office an affidavit showing certain matters.    Thus there is placed upon the clerk the duty of examining the affidavit in order to determine whether it meets the requirements of the statute. By issuing the writ he affirms that all the prerequisites of the statute have been complied with.    When the court grants judgment, and orders a sale of the attached property, and affirms the sale made, the court sustains its jurisdiction in the premises.    In thus acting both clerk and court are acting within the limits of their admitted power and jurisdiction, and their action in the premises cannot be attacked collaterally.    In Voorhees v. Jackson, supra, it is said:

"The line which separates error in judgment from the usurpation of power is very definite, and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so."

It cannot be denied that when the petition and affidavit were filed in the district court of Colfax county in the case against Graff, Bennett & Co. it became the duty of the clerk, in pursuance of the requirements of the state statute, to examine the same, in order to ascertain and determine whether an order for an attachment should be granted at the request of the plaintiffs in that action.    So, also, when the court was asked to enter a judgment and order a sale of the attached property, it became its duty to ascertain whether the plaintiffs were or not entitled to the judgment and order prayed for, and the granting the judgment and order of sale is a finding that the court has jurisdiction, which in turn is a decision that all the steps necessary to confer jurisdiction have in fact been taken.

Thus, in Colton v. Beardsley, 38 Barb. 29, it is said:

"The test of jurisdiction is whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong."

In Tallman v. McCarty, 11 Wis. 401, it is said:

"Had the court or tribunal the power, under any circumstances, to make the order or perform the act? If this be answered in the affirmative, then its decision upon those circumstances becomes final and conclusive, until reversed by a direct proceeding for that purpose."

In Clary v. Hoagland, 6 Cal. 685, it is said:

"The first point decided by any court, although it may not be in terms, is that the court has jurisdiction, otherwise it would not proceed to determine the rights of the parties."

In Thornton v. Baker, 15 R. I. 553, 10 Atl. 617, it is stated:

"Where jurisdiction depends on the finding of a particular alleged fact, the exercise of jurisdiction implies the finding of that fact."

In Osborn v. Sutton, 108 Ind. 443, 9 N. E. 410, the rule is stated to be that:

"The assumption of authority is an assertion of jurisdiction without any formal statement of the facts essential to give jurisdiction."

In Florentine v. Barton, 2 Wall. 210, in which case a collateral attack was attempted on a title based upon an administrator's sale of land, the supreme court held:

"In making the order of sale the court is presumed to have adjudged every question necessary to justify such order or decree."

While there are cases to be found to the contrary, yet the decided weight of authority sustains the following propositions, to wit: That where a collateral attack is made on the validity of judicial proceedings, the question whether the court whose order or judgment is attacked could, under any state of facts, have had jurisdiction, is always open to examination; but if it appears that the court has jurisdiction over the general subject-matter, and the question is whether the court had the right to proceed in the particular case brought before it, the right to proceed being dependent upon the existence of certain facts, and the court by proceeding adjudges that it has jurisdiction in the particular case, the court thereby adjudges the existence of all facts necessary to sustain the jurisdiction. And as this adjudication is within its power to make, it is, when made, binding upon all parties, unless reversed by a proper and direct proceeding to that end; and until thus reversed it is conclusive, and cannot be attacked in a collateral proceeding. This being the rule, this court is not authorized in this proceeding to examine into the question whether the affidavit filed in the attachment suit in the district court of Colfax county did or did not fully meet the requirements of the state statute. That court has determined, in effect, that the affidavit was sufficient. That court had the jurisdiction to determine that question, and its decision, whether right or wrong, unless reversed by that court, or by some court having power to reverse or annul the decision, is binding and conclusive. It thus appearing that the defendant holds title to the land in dispute, which title is superior in equity to that asserted by complainant, it follows that complainant's bill must be dismissed upon the merits, and at his costs.